IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARILYN C. DAILEY,            )
                                    )
       Plaintiff,           )
                                    )
v.                            )        CIVIL ACTION NO. 11-0347-KD-N
                                    )
MICHAEL J. ASTRUE, Commissioner  )
Of Social Security,            )
                                    )
       Defendant.       )

REPORT AND RECOMMENDATION

In this action, plaintiff appeals the final decision of the Commissioner denying her claim

for a period of disability and disability insurance benefits. This matter has been referred to the

undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636 and

Local Rule 72.2(c)(3). By order (doc. 19) dated April 6, 2012, the undersigned granted the

parties' joint motion to waive oral argument (doc. 18). After careful consideration of the record,

including the briefs of the parties, it is the recommendation of the undersigned that the decision

of the Commissioner be AFFIRMED .

Procedural Background

Plaintiff filed an application for disability insurance benefits on February 9, 2009. She

alleged that she became disabled on January 15, 2007, due to depression, anxiety and stress.

Plaintiff's application was denied by the agency and plaintiff filed a timely request for hearing

before an administrative law judge ("ALJ"). The hearing was held on September 9, 2010, at

which plaintiff was represented by counsel. On November 10, 2010, the ALJ issued a written

decision: the ALJ found that plaintiff suffered from the severe impairments of major depressive

disorder, generalized anxiety disorder and mild osteoarthritis but denied benefits. Plaintiff

requested that the Appeals Council review the decision, but that request was denied on May 9,

2011, rendering the ALJ's decision the final decision of the Commissioner.  20 C.F.R.

§ 404.981.  The instant appeal was timely filed.

<u>Scope of Judicial Review</u>

A limited scope of judicial review applies to a denial of Social Security benefits by the

Commissioner. Judicial review of the administrative decision addresses three questions: (1)

whether the proper legal standards were applied; (2) whether there was substantial evidence to

support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.

<u>Washington v. Astrue</u>, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); <u>Fields v. Harris</u>, 498 F.Supp.

478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or

substitute its judgment for that of the Commissioner. If substantial evidence supports the

Commissioner's factual findings and the Commissioner applies the proper legal standards, the

Commissioner's findings are conclusive. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439-40 (11th Cir.

1997); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d

1520, 1529 (11th Cir. 1990); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987); <u>Hillsman v.

Bowen</u>, 804 F.2d 1179, 1180 (11th Cir. 1986); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239

(11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a

preponderance.  In other words, "substantial evidence" means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion and it must be enough to

justify a refusal to direct a verdict were the case before a jury.  <u>Richardson v. Perales</u>, 402 U.S.

389 (1971); <u>Hillsman</u>, 804 F.2d at 1180; <u>Bloodsworth</u>, 703 F.2d at 1239. "In determining

whether substantial evidence exists, [the Court] must view the record as a whole, taking into

2

account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999.

Statutory and Regulatory Framework

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455, 1456 n .1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[1]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. Id.

---

[1] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). Id. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. Id. It also can contain both exertional and nonexertional limitations. Id. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. Id. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids") ,or hear testimony from a vocational expert (VE). Id. at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. Id. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." Id.

<u>Facts</u>

The following findings are based on the administrative record (doc. 10), particularly upon the findings contained in the decision of the ALJ (id. at 14-24).

Plaintiff was born in 1957; she was 49 years of age on the alleged onset date and was 53 years of age at the time of the administrative hearing.[2]  She had been employed as a teacher from 1989 to 2007.  The vocational expert ("VE") who testified at the administrative hearing

---

[2] Under Social Security Regulations, 20 C.F.R. § 404.1563, a person 18-49 years of age is considered a "younger individual."  At the time of the hearing, the plaintiff's age placed her in the category of "closely approaching advanced age" [50-54].  Id.

5

classified plaintiff's prior employment as light, skilled work and testified that she could no longer perform her prior work; the ALJ adopted those opinions.

The ALJ held that plaintiff suffered from three severe impairments: major depressive disorder; generalized anxiety disorder; and mild osteoarthritis.  The ALJ further found that, though plaintiff had been diagnosed with hypolipidemia, her condition was stable and her symptoms controlled and thus, as there was no other evidence of on-going symptoms, complications or end-organ damage, this condition was held not to be 'severe.'  The ALJ found that plaintiff's impairments, singly and in conjunction, did not meet or equal a listing.

Plaintiff saw her primary care physician, Dr. Elizabeth Bataglia-Hillman on January 31, 2007, and was diagnosed with depression and anxiety.  Plaintiff told her therapist that both of her parents had died within a short period prior to her problems and that she had suffered what she later referred to as a "breakdown" at school. Doc. 10 at 263.  Her doctor prescribed the antidepressant medication Celexa (generic name citalopram)[3] and referred plaintiff to a mental health center for evaluation.  Dr. Bataglia-Hillman also provided plaintiff with a letter to the school district (id. at 214) recommending that she be placed on medical leave through the end of the school year.[4]

---

[3] There is also a mention of Lexapro (generic name escitalopram) (id at 210), a different but related form of anti-depressant, but it nonetheless appears that plaintiff was prescribed Celexa, beginning at a 20 mg. dose.  The dosage was later increased to 40 mg.

[4] The letter indicates that plaintiff had an appointment for psychiatric evaluation at Evergreen mental health on March 30 [2007].  The administrative transcript contains no record of such an evaluation or of any treatment at that facility.  As noted by the ALJ, the record indicates that plaintiff did not seek counseling until December 18, 2008.  Id. at 226

Dr. Bataglia-Hillman continued to provide refill prescriptions to plaintiff; a note in plaintiff's medical file indicates that plaintiff saw Dr. Bataglia-Hillman on June 4, 2009, for refills of her medications, but had not been seen for a approximately a year before that time. Staff notes indicate that plaintiff complained that her meds were not helping.  Id. at 252. Plaintiff next saw Dr. Bataglia-Hillman on June 3, 2010, again seeking refills of her medications, and complaining of sleep problems; she was prescribed a sleep aid.  Plaintiff had also lost weight at that time and was tested for anemia and counseled on eating properly.  Id.

The social security transcript contains records of plaintiff's approximately monthly counseling sessions at Southwest Alabama Mental Health/Mental Retardation Board, Inc.  The records contain references to her progress and continued problems.  The ALJ lists instances in which plaintiff stated that she was doing well and concluded that plaintiff "consistently reported no major stressors or depression" (id. at 19).  Plaintiff's medical records also contain numerous iterations of her continued complaints related to her depression and anxiety as well as questions about whether her medications were effective.  See e.g. Doc. 10 at 262-65 (temper, irritability, seclusivity; anxiety, concentration/memory issues, weeping spells, poor appetite, weight loss, poor sleep.  Plaintiff reported "slight" improvement with Celexa so dosage was increased), id. at 280 (depression 6-7 on scale of 10; can't tell if meds are helping), 294 (review of symptoms); 281 (doing "so-so); 285 (though plaintiff says she is doing "real good," she rates depression as 5 out of 10); 286 (trouble sleeping); 287 (same); 288 (anxiety and depression); 315 (better on medication but still depressed occasionally).   In addition, there are also two notations of complaints of hearing a whistling noise (311, 315), and one of smelling "something funny" (281).

7

The ALJ found that plaintiff's activities of daily life included attending church; she was involved in a church group that met once a month, but otherwise largely remained at home watching television and doing housework.  The ALJ also noted that plaintiff had purchased a piano and had told her therapist that she wanted to start teaching piano: the record is silent as to whether plaintiff ever succeeded in doing so.  On the basis of these findings, the ALJ found that plaintiff had no more than moderate limitations in social functioning.

One of plaintiff's primary care physicians, Dr. Stanley Barnes, completed a Mental Residual Functional Capacity Questionnaire (id. at 266) on July 8, 2010.  He stated that plaintiff had marked limitations in activities of daily living, social functioning, and concentration, persistence or pace, that she had four or more episodes of decompensation, and had marked limitations in understanding, carrying out and remembering instructions, responding appropriately to supervision and to co-workers, and performing simple or repetitive tasks.  The ALJ rejected the opinions contained in this questionnaire, stating

> Dr. Barnes's opinion is given little weight for several reasons.  First, Dr. Barnes has not treated the claimant's mental impairments.  Although he diagnosed her with anxiety and depression, he referred her for treatment at Southwest Alabama Mental Health (Exhibit 9F-6).  Moreover, the treatment notes from Southwest Alabama Mental Health do not support the degree of limitation assessed by Dr. Barnes.  She has required only conservative treatment to "maintain stability" (Exhibit 12F)).  The claimant reported that she was doing "really good."  She reported no stressors or depression on multiple occasions.  She was involved in church and was planning to teach piano lessons.  The treatment notes regarding the claimant's mental impairments do not support the severe limitations set out in Dr. Barnes' opinion.  Not only does Dr. Barnes not treat the claimant's mental impairments, he has only evaluated the claimant on two occasions in a two-year period for her physical complaints.  The infrequent nature of his treatment of the claimant suggests that he does not have knowledge of the claimant's condition to make the conclusions in the opinion.  Further, the claimant's testimony and reported daily activities do not support Dr. Barnes's opinion (Hearing Testimony).  As previously discussed, the claimant performs a variety of daily activities which demonstrates a much higher level of functioning than determined by Dr. Barnes.

8

Doc. 10 at 21-22.

Issues

Plaintiff raises three issues in this appeal:

1) The Commissioner's mental residual functional capacity assessment is not supported by the medical opinion of any treating or examining medical source;

2) The Commissioner erred in failing to develop a full and fair administrative record, resulting in a flawed physical residual functional capacity assessment; and

3) The Commissioner erred in failing to pose a comprehensive hypothetical question to the vocational expert.

Analysis

Replacing Doctor's Mental RFC

Plaintiff's first argument is that the ALJ improperly rejected the  treating physician's opinion on plaintiff's Residual Functional Capacity ("RFC"), instead relying either on her own lay opinion or that of a non-examining agency employee.  Plaintiff cites Coleman v. Barnhart, 264 F.Supp.2d 1007 (S.D.Ala. 2003) and Lee v. Astrue, Civil Action No. 10-577-N (S.D.Ala. May 16, 2011)(doc. 19), in support of his position.  Defendant seeks to distinguish two other cases from this district, Harrison v. Astrue, 2011 WL 4499242 (S.D.Ala.) and Morgan v. Astrue, 2010 WL 5376336 (S.D.Ala.), on the basis that these two cases involved replacement of the treating physician's opinion with one drawn from a non-medical disability examiner the instant action, while the ALJ chose to rely on the decision of a state agency non-examining psychologist in the instant action.

The Commissioner argues[5] that, because he has the responsibility to determine the claimant's RFC, all evidence should be considered, including medical and non-medical material. Doc. 16 at 4-5.  The court does not dispute that statement of the applicable law.  However, such an RFC decision ultimately must be supported by legally sufficient evidence, and on review, the court is required to assure that such "substantial evidence" supports that and other determinations.  While this is a deferential standard, it is not an empty requirement.

In this Circuit, it is well established that the opinion of a nonexamining, reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990). This means that, if there is no other evidence supportive of the ALJ's RFC determination, an RFC determination based on the opinion of a nonexamining physician is not supported by substantial evidence as a matter of law.  In the instant case, the agency single decision maker is not an M.D. but a psychologist[6]; that distinction does not alter the situation in the Commissioner's favor, especially where that opinion is contrary to opinions from a treating physician.

---

[5] Defendant's Response places this issue in sharp relief, arguing not that the holdings in these cases are factually distinguishable, but rather arguing that this court's prior precedent on this issue is wrong and thereby implicitly acknowledging that these holdings otherwise apply. Doc. 16 at 4 ("The Commissioner respectfully submits that the reasoning in these cases cannot be reconciled with the Commissioner's regulations, as well as other authority within the Eleventh Circuit").

[6] The mental RFC Assessment (doc. 10 at 248 et seq.) was completed by Joanna Koulianos, Ph.D.

The government also argues that the ALJ's RFC determination need not be based on an RFC by a treating or examining physician in every case. Doc. 16 at 6, *citing* Griffin v. Astrue, 2008 WL 4417228, at *10 (S.D.Ala.). Again, this court does not dispute that point: where the record is devoid of an RFC opinion by a treating or examining physician, the ALJ may, in an otherwise proper case, reach a valid RFC determination without relying on an RFC of an examining or treating physician. Indeed, in Griffin, the court expressly rejected plaintiff's claim that a physician's assessment was required. The Griffin court found that the RFC in that case was "supported by claimant's treating physicians, as well as the absence of functional limitations placed on the claimant by any medical source," and that plaintiff has "not demonstrated that the ALJ did not have enough information to enable him to make a RFC determination. Id. at *10.

The Commissioner clearly is allowed under applicable law to discount the RFC opinion of a treating physician. *See* 20 C.F.R. § 404.1527(d)(2); Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(good cause for discounting treating physician's opinion exists when (1) treating physician's opinion is not bolstered by evidence; (2) evidence supports contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with physician's own medical records). However, where an ALJ gives reduced weight to a treating physician's RFC opinion, he or she is not then free to create an RFC which is contrary to the opinion of the treating physician unless the new RFC is supported by an opinion from a treating or examining medical source. *See e.g.* Canfield v. Astrue, 2007 U.S. Dist. LEXIS 96161 (S.D.Ala., October 9, 2007)(rejection of RFC and pain evaluation by treating source and reliance on lay opinion improper); Cosey v. Astrue, 2008 WL 2561585 at *3 (S.D.Ala., June 25, 2008); Fisher v. Astrue, 2008 WL 4417325 at *3 (S.D.Ala. Sept. 23, 2008); Doss v. Astrue, 2007 WL 4570551 (S.D.Ala.,

December 20, 2007) ("This Court has held on numerous occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence or otherwise, where available, by the residual functional capacity assessment of a non-examining, reviewing physician...but instead must be supported by the residual functional capacity assessment of a treating or examining physician. Such an assessment is particularly warranted where, as here, the ALJ has rejected the only physical RFC assessment in the record."); Dyas v. Astrue, 2010 WL 4117030 (S.D.Ala., October 19, 2010)(rejection of facially-valid RFC from treating source on basis that ALJ does not believe it to be supported by objective tests does not equate to plaintiff's failure to bear his burden of proof of disability, and can not be replaced by conjecture). The Commissioner has not offered any argument or authority which demonstrates, let alone convinces this court, that this line of cases is wrong on this point.

In the instant case, the ALJ found that Dr. Stanley Barnes' opinions contained in the mental RFC questionnaire he completed were entitled to little weight. The plaintiff does not directly challenge this determination. Nonetheless, the court addresses the ALJ's determination that Dr. Barnes did not treat plaintiff for depression and anxiety, to the extent that this finding implicitly may contradict the plaintiff's position that Dr. Barnes was plaintiff's treating physician.

In an office note dated June 9, 2010, Dr. Barnes included a narrative of plaintiff's history of depression and anxiety. Dr. Barnes recites that he saw her in the emergency room and that "we" took her off work at that time. Dr. Bataglia-Hillman, rather than Dr. Barnes, signed a letter to plaintiff's employer recommending that plaintiff be placed on medical leave until the end of the school year; Dr. Battaglia-Hillman also appears to have initially diagnosed plaintiff's

conditions and referred her to Evergreen Mental Health.  Nonetheless, Dr. Barnes appears also to have been involved with plaintiff's case at that time.  On June 9, 2010, plaintiff came to Dr. Barnes seeking help with social security forms[7] and complaining of "a bunch of issues" including anxiety and depression as well as social functioning and cognitive disorders (doc. 10 at 269).  Again, on July 8, 2010, she came to him complaining of depression.  In his office note for that day, he indicates that he had sent forms to her attorney; the forms are dated July 8, 2010.[8] No other pre-opinion records reflect Dr. Barnes was involved in treating plaintiff for depression.

The regulations state that the Commissioner will generally "give more weight to opinions from ... treating sources," and "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(d)(2), 416.927(d)(2).   Social Security Regulation 20 CFR § 404.1527(c)(2) describes the factors that support giving greater weight to the opinions of treating physicians:

> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically

_____

[7] Plaintiff's "presenting problem" is described as "look at papers for court case." Doc. 10 at 294.

[8] There are also other treatment notes related to her depression, but as they postdate the RFC questionnaire, they are not relevant to the determination of whether Dr. Barnes was a treating physician at the time he completed that form.

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

The factors of length of relationship, frequency of examination, and level of knowledge of plaintiff's condition do not apply to the questionnaire completed by Dr. Barnes. In light of the minimal indications that Dr. Barnes treated plaintiff for depression and anxiety or even regularly saw plaintiff prior to her request that he complete the mental RFC form, the court finds that the ALJ's determination—that Dr. Barnes' should not be deemed to have been plaintiff's treating physician for purposes of her mental impairments—is supported by substantial evidence. Thus, as noted above, the ALJ was not required to give those opinions expressed in the RFC form controlling weight. Further, as the plaintiff did not present an RFC from a treating physician, the plaintiff failed to bear her burden of proof and could not reasonably have relied on the opinion of

Dr. Barnes to have satisfied that burden.  In such a situation, as set forth above and in <u>Griffin v.</u> <u>Astrue</u>, 2008 WL 4417228, at *10 (S.D.Ala. 2008), the ALJ was not automatically precluded from reaching a valid RFC determination without the support of an RFC by an examining or treating physician.  Plaintiff's claim to the contrary is due to be denied.

<u>Full and Fair Record on Physical RFC</u>

Plaintiff next argues that the ALJ erred by failing to create a full and fair record to support findings on plaintiff's physical RFC.  Specifically, plaintiff alleges that the record lacks evidence to support the limitations found by the ALJ caused by plaintiff's mild osteoarthritis and that the ALJ was required to seek an orthopedic consultive examination before making an RFC finding.   As set forth above, an ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source. *See* <u>Griffin v. Astrue</u>, 2008 WL 4417228, at *10.  Plaintiff acknowledges—and, indeed, plaintiff bases her argument on the fact—that the record contains no opinion evidence and little or no other evidence establishing plaintiff's physical limitations resulting from her mild osteoarthritis.

Apparently, plaintiff's complaint is that the ALJ gave her the benefit of the doubt in finding that she had *any* limitations from her mild osteoarthritis and that such limitations are not fully supported.  Despite never claiming to have physical limitations, plaintiff does not allege that she had any greater limitation that was found, but argues that, in the absence of more evidence of specific limitations, and indeed in the absence of any allegation by plaintiff in her claim or in testimony at the hearing that she suffered physical problems in addition to her mental

ones, the ALJ nonetheless was required to obtain a consultive examination before reaching a physical RFC determination.

The ALJ's decision contained the following discussion of the evidence concerning plaintiff's physical symptoms:

> On examination, her extremities showed evidence of arthralgias and myalgias.[9] She does not take any medication for the osteoarthritis and the claimant stated that physically, she is doing fine (Exhibit 10E and Hearing Testimony). Nevertheless, the osteoarthritis reasonably results in some physical limitations. As a result of the mild osteoarthritis, the claimant is limited to work at the medium exertional level. She can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently. She can sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday.

Doc. 10 at 20.

It is clear that the physical limitations found by the ALJ meet or—according to plaintiff—exceed the limitations claimed by plaintiff or shown by plaintiff's medical records.[10] Although the ALJ is "bound to make every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence necessary to make a determination," the burden is on Plaintiff to prove that he is disabled. *See* <u>Sellers v. Barnhart</u>, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002)("While it is reversible error for an ALJ not to order a consultative examination when the evaluation is necessary for him to make an informed decision, . . . the ALJ is not required to order a consultative examination unless the record, medical and non-medical, establishes that such an examination is necessary to enable the ALJ to render a decision.")(*citing* <u>Reeves v. Heckler</u>, 734 F.2d 519, 522 n. 1 (11th Cir. 1984); <u>Holladay v. Bowen</u>, 848 F.2d 1206,

---

[9] Joint and muscle pain, respectively.

[10] Plaintiff's counsel still does not claim any greater physical impairment than was found by the ALJ.

16

1210 (11th Cir. 1988)).   An ALJ is not required to order a consultative examination for  every impairment which a claimant may allege. *See* McCray v. Massanari, 175 F. Supp. 2d 1329, 1340 (M.D. Ala. 2001) (*citing* Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).   A consultative examination is only required when "necessary" to assist the ALJ in making an informed decision. *See* McCray at 1340 (*citing* Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977); *see also* Sellers, 246 F.Supp. 2d at 1210.

The undersigned recommends that the court find that the ALJ was not required to order a consultive examination to make the plaintiff's case for her, in the absence of any colorable evidence of greater limitations than those found.

Comprehensive Hypothetical

Plaintiff's final claim in this appeal is that the hypothetical questions posed by the ALJ to the vocational expert ("VE") at plaintiff's hearing did not expressly refer to the ALJ's findings that plaintiff had marked difficulties in maintaining social functioning and in her ability to maintain concentration, persistence and pace, and thus that the ALJ's ultimate decision on disability was not supported by substantial evidence.   Plaintiff bases her argument on the recent decision of the Eleventh Circuit in Winschel v. Comm'r of Social Security, 631 F.3d 1176 (11th Cir. 2011).

In addition to physical limitations, the ALJ's hypothetical included the following provisions related to plaintiff's depression and anxiety:

> I'm going to restrict the work to being short, simple instructions, even one and two-step job instructions with no detailed or complex instructions.   No work in crowds, and really only occasional contact with the public.   Okay?

> I'm going to reduce it by indicating minimal changes in the work setting and routines, just some very basic work with no major changes at all in the routines or the settings.

Doc. 10 at 50.  The VE replied that there existed jobs in the national economy which the hypothetical person could perform, and gave kitchen worker and assembler.  Id. at 50-51.  The ALJ then posed a second hypothetical which added that the individual would be unable to meet the normal attendance and production requirements 3-4 days out of the month, that is, would be unable to sustain work for the whole day, would not be able to come in on time and would have to leave early.  Id.[11]

Plaintiff argues that "the ALJ stated in her hypothetical that the hypothetical individual has the mental residual function capacity for performing only simple tasks."  Doc. 11 at 20.  This understates the ALJ's attempt to incorporate the limitations she had found resulted from plaintiff's mental impairment.  The portion of the ALJ's decision quoted above represents the incorporation of the sort of detailed findings that satisfies the requirements for a hypothetical in this circuit, as set forth in Winschel, 631 F.3d at 1180 ("when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in

---

[11]     The transcript of the hearing, however, does not contain the end of the ALJ's question, to which the VE responded negatively.

> Q:  My second hypothetical will just be adding to that.  Unable to meet the attendance and production requirements several days out of the month.  By that, I mean that three to four days a month, the individual would be unable to sustain work for the whole day.  Would not be able to come in on time and would have to leave early.  Is that an additional restriction [INAUDIBLE]
>
> A:  No, ma'am.

Id. at 51.  Given the incomplete transcript of the question, it is unclear whether the ALJ asked whether the new limitation was an additional restriction with which plaintiff could still find work, or was an additional restriction which would preclude gainful employment.  The meaning of the VE's negative answer is dependent on the missing portion of the question.  However, it is the first, rather than this second hypothetical, upon which plaintiff's challenge is based.

concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.").   Plaintiff's third assignment of error is without merit.

<u>Conclusion</u>

For the foregoing reasons, it is hereby RECOMMENDED that the court find that plaintiff's claims are due to be denied, and enter judgment in favor of the defendant.

*See* **Magistrate Judge's Explanation of Procedural Rights, attached, for important information on how to proceed.**

DONE this the 18th day of July, 2012.


/s/  Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added)   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson